FILED
2021 Dec-14  PM 12:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **ROYAL ANTONIO BROWN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  7:20-cv-930-RDP** |
| | } | |
| **KILOLO KIJAKAZI, Acting** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

### MEMORANDUM OF DECISION

Plaintiff Royal Antonio Brown brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").[1] *See also* 42 U.S.C. §§ 405(g) and 1383(c).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I.  Proceedings Below

Plaintiff filed his applications for disability, DIB, and SSI on August 2, 2018.  (Tr. 214-28).  In both applications, Plaintiff alleged that his disability began on May 12, 2016.  (Tr. 214, 216, 223).  The Social Security Administration initially denied these applications on December 6, 2018.  (118-19, 146-55).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 156). Plaintiff's request was granted and a hearing was held on November 14,

---

[1] Plaintiff commenced this action on July 1, 2020. (Doc. # 1). Plaintiff's counsel points out that "[Plaintiff] filed a new application for benefits on July 2, 2020, which was approved at the initial claim level on November 25, 2020." (Doc. # 11 at 1). As counsel failed to state the period of disability for which Plaintiff was approved, the court presumes it was for a different period of disability than the one stated in this action.

2019.  (Tr. 63-89, 172).  Plaintiff and his counsel participated in the hearing via video, and vocational expert ("VE") Debra Civils participated in the hearing via telephone. (*Id.*).

In her decision dated December 27, 2019, the ALJ determined that Plaintiff had not been under a disability as defined in the Act from May 12, 2016, through the date of her decision. (Tr. 8-20). After the Appeals Council denied Plaintiff's request for review on June 15, 2020, the ALJ's decision became final, and therefore a proper subject of this court's appellate review.  (Tr. 1-6).

At the time of the ALJ hearing, Plaintiff was forty-eight years old and had at least a high school education.  (Tr. 71). Plaintiff has past work history as a security guard, an armored car guard, and an alarm investigator.  (Tr. 82-84).  Plaintiff alleges that he is unable to work due to complications from having two strokes, high blood pressure, memory problems, diabetes, heart problems, obesity, and issues with both his hands, his left side, and his left leg and foot.  (Tr. 249). During the hearing, Plaintiff testified that he has developed a stutter and suffered worsening memory since his stroke in 2017. (Tr. 69, 71, 77). He further testified that he is unable to exercise, suffers from significant physical limitations that require use of a cane, has vision problems, and neuropathy from diabetes. (Tr. 73-79). He stated that he is able to watch television, goes to church, does some household chores, and talks to his friends on the phone. (Tr. 74, 79).  Plaintiff also testified that he does not drive because he has poor eyesight.  (Tr. 73). Other than noting his bad memory (Tr. 77), Plaintiff did not reference his mental health or capacity.

At the conclusion of the hearing, the VE testified that, in her opinion, Plaintiff's residual functional capacity ("RFC") renders him unable to continue in his past employment; however,

the VE opined that there were other jobs in the national economy that Plaintiff could perform, such as marker, cleaner, housekeeper, or assembler.  (Tr. 86).

Plaintiff first visited Macon Primary Care on October 5, 2015, seeking management for his "chronic medical problems" and medication refills. (Tr. 392). Plaintiff was found to have normal strength in all extremities and a blood-sugar level higher than normal. (*Id.*). Plaintiff was given preventative counseling for nutrition and weight loss, directed to follow up for labs, and provided medication refills.  (Tr. 394).

On November 29, 2015, Plaintiff presented to Whitfield Memorial Hospital's emergency room complaining of dizziness.  (Tr. 305).  Plaintiff conveyed that he had been in a car accident the previous week, but was not seen by a physician because he "felt alright that day." (Tr. 311). It was noted that, beginning the day after the accident, Plaintiff had trouble with balance and a headache.  (*Id.*). Plaintiff was diagnosed with vertigo and discharged with instructions to follow up with his regular doctor, and was told he could return to work on December 5, 2015. (Tr. 323). Dr. K.M. Kinesh Chandra noted "Questionable CVA in 11/2015."  (Tr. 364).

On December 1, 2015, Plaintiff was seen in the emergency room at Anderson Regional Medical Center with complaints of dizziness and increased blood pressure and blood sugar. (Tr. 332). Records from this visit note that Plaintiff "went to ER in Demopolis Sunday and was sent home. Went to Macon General today[2] and was told that he had a stroke and was sent here." (Tr. 337-38). Records further note that "CT head done at Macon Hospital shows 'hypoattenuation in the white matter in the parieto-occipital region in the right internal capsule is nonspecific and may represent age indeterminate infarct. MRI brain is recommended for better evaluation.'" (Tr. 334). Plaintiff remained stable while in the ER at Anderson Regional. (*Id.*). An MRI was

---

[2] The records before this court do not include any medical records from Macon General dated December 1, 2015. Records dated January 31, 2016 from DCH Regional Medical Center note "[Plaintiff] was hospitalized in 11/15 for at least 2 days for CVA in [M]acon, MS."

ordered, but prior to receiving, Plaintiff stated that "he was leaving." (Tr. 340). It was noted that Dr. Brown "d[id]n't think [Plaintiff] need[ed] anything done on an emergent basis, and if [Plaintiff] wants to leave, let him." (Tr. 341). Plaintiff signed an Against Medical Advisement ("AMA") form and left the ER. (Tr. 340). The MRI was cancelled after Plaintiff's departure. (Tr. 351). The clinical impression from this visit was noted as "Vertigo, Left-sided weakness, Abnormal CT scan, head, Hypertension, Diabetes, Noncompliance." (Tr. 334).

On December 21, 2015, Plaintiff returned to Macon Primary Care for a follow up visit. (Tr. 396). Plaintiff reported feeling better, that his blood pressure was better, and that his blood sugars had been "running 138 to 142, taking meds as ordered." (Tr. 396). Plaintiff also reported "still having some left sided weakness but has been exercising to regain strength." (Tr. 397). No clear plan was given other than to continue to take his current medications and to follow up in one month. (Tr. 399).

On January 23, 2016, Plaintiff was transferred via EMS from Pickens Medical Center to the DCH Regional Medical Center emergency department for evaluation of chest pain, dizziness, and left foot pain. (Tr. 371, 635, 651). Plaintiff was admitted for further evaluation and management. (Tr. 376). Imaging showed that Plaintiff had an extensive pulmonary artery embolism. (Tr. 383). An x-ray of his left foot showed normal alignment and no acute fracture. (Tr. 639). On January 27, 2016, an x-ray was taken of Plaintiff's left knee that revealed moderate to severe tricompartmental osteoarthritis. (Tr. 379). Plaintiff was discharged on January 31, 2016, with instructions to take medication and to follow up as needed. (Tr. 387).

On February 4, 2016, Plaintiff returned to Macon Primary Care for lab work following his hospitalization at DCH. (Tr. 400). Plaintiff's physical exam found him alert, oriented to person/place/time, in mild distress, and ambulating with crutches. (Tr. 401). Plaintiff's

neurologic exam found him to have decreased tone/strength. (Tr. 402). There was no evidence of obesity-related limitations.   (Tr. 402). Plaintiff was reminded to comply with his diet and exercise directions, as well as take his medication as prescribed.  (Tr. 403).

On April 21, 2016, Plaintiff presented to Macon Primary Care with complaints of left leg numbness and pain, headaches when trying to drive, and eye pain bilaterally.   (Tr. 405). Plaintiff's blood pressure was elevated, though he reported taking "meds as ordered." (*Id.*). He further reported his blood sugars were 120-156. (*Id.*). Plaintiff was referred to UAB School of Optometry for his vision complaints and instructed to go to the ER for further evaluation if his headache worsened.  (Tr. 409).

Plaintiff's next visit with Macon Primary Care was on June 27, 2016.  (Tr. 410).  During this visit, Plaintiff complained of having edema for two weeks in his lower extremities bilaterally, but no pain in his calf or legs, a rash all over his body, and also needed refills on medications. (*Id.*). Plaintiff acknowledged changing detergents in the preceding couple of weeks, and his blood pressure was noted as elevated, but he reported being out of medication for one day.  (*Id.*). Plaintiff further reported checking his blood sugars daily but presented no logs to review.  (*Id.*). Plaintiff complained about his vision and noted an upcoming eye appointment.[3] (Tr. 411). There continued to be no evidence of obesity-related limitations.  (Tr. 412).  The need for lab work was discussed with Plaintiff but he reported that he was unable to afford any labs that day and would return for lab work in the next couple of weeks. (Tr. 414). Plaintiff's medications were adjusted to help with blood-pressure control and lower-extremities edema, and he was told to elevate his extremities, limit his sodium intake, and follow up in one week. (*Id.*).

---

[3] Although Plaintiff mentioned he had an upcoming eye appointment the court finds no record of that appointment (or any other eye appointment during that timeframe).

After June 2016, there was no significant change in Plaintiff's medical records. Plaintiff's non-compliance with his medical treatments (Tr. 419, 464, 530), as well as his complaints of blurred vision continued[4] (Tr. 449-50, 472, 610, 616, 663, 667, 671, 675, 681, 698, 713, 717, 751, 756).  Nor was there any evidence of Plaintiff's obesity limiting his abilities (Tr. 637, 664, 668, 682, 758) or any ongoing knee pain associated with his diagnosis of osteoarthritis in January 2016.  (Tr. 529, 532, 534, 536, 539, 542, 547, 549, 552).  Plaintiff did continue to show evidence of mildly impaired short-term memory.  (Tr. 431, 472, 621, 631, 649, 660, 664, 668, 672, 676, 682, 687, 699, 714, 718, 723).  And, Plaintiff's edema continued to improve with treatment.  (Tr. 420, 428, 450, 457, 472, 532, 534, 536, 539, 542, 547, 549, 552, 611, 618, 658, 660, 664-65, 668-69, 676, 682, 684, 687, 697, 699, 716, 723, 743, 748, 754, 758).

On January 17, 2017, Plaintiff presented to the Pickens County Medical Center with complaints of elevated glucose and blurred vision. (Tr. 609). He was discharged but returned the next day, again with elevated blood sugar and generalized weakness.  (Tr. 456). Though it is noted he is a "poor historian," Plaintiff reported he had been out of diabetic medication for three months. (Tr. 458). Plaintiff was admitted for further assessment.  A CT scan showed results most compatible with an old encephalomalacia bilaterally and microangiopathy in the periventricular white matter bilaterally. (Tr. 464, 453, 495). A brain MRI showed a moderate-sized acute superior left parietal lobe infarct without hemorrhage or significant mass effect, and an old moderate sized watershed infarct in the right parietooccipital region. (Tr. 494). A chest x-ray showed no evidence of acute or active cardiopulmonary or pleural disease. (Tr. 496). A carotid doppler ultrasound with duplex resulted in trace bilateral carotid plaque without significant stenosis. (Tr. 513). Additionally, Plaintiff was referred to physical therapy due to his difficulty

---

[4] In May and August of 2019, assessments of Plaintiff's blurred vision came back as negative.  (Tr. 753-54, 757-58).

walking. (Tr. 525). Plaintiff was released from Pickens County Medical Center on January 25, 2017 with a problem list of diabetes, hypertension, and a cerebral vascular accident. (Tr. 470).

Plaintiff began to regularly receive medical treatment from Whatley Health Services on January 8, 2018, the date he first presented complaining with acute leg swelling. (Tr. 658). Plaintiff was prescribed Lasix and given strict instructions to reduce salt and fluid intake, elevate his leg, and wear compression hose. (Tr. 660).  On January 22, 2018, Plaintiff was seen for a follow up for his left leg swelling. (Tr. 662). Plaintiff was told he needed better glucose and blood pressure control. (Tr.  664). Thereafter, Plaintiff was seen various times for follow up and maintenance of his diabetes and high blood pressure, and was continually told to adhere to his medication. (Tr. 670, 674, 678, 680, 684, 689, 695). Whatley Health Services assessed Plaintiff's memory as "normal" on each office visit in 2018. (Tr. 660, 664, 672, 676, 682, 687, 699).

Plaintiff returned to Pickens County Medical Center on May 22, 2018, with complaints of chest pains. (Tr. 418). Chest x-rays were taken but no acute abnormality was seen. (Tr 437). The physician described Plaintiff as "non-compliant with meds" and a "poor historian." (Tr. 419).

A state-agency physician assessed Plaintiff's disability on December 6, 2018. (Tr. 92, 105). The physician found Plaintiff's medically determinable impairments consistent with essential hypertension and diabetes mellitus. (Tr. 100). Both were determined to be non-severe. (*Id.*). The physician considered Plaintiff's allegations "partially consistent with the medical evidence of record." (Tr. 103).

On October 7, 2019, Plaintiff saw Dr. John R. Goff, Ph.D., for a neuropsychological evaluation at the request of his attorney. (Tr. 730). Plaintiff complained of poor sleep, depression, crying, weakness on his left side, and a stammer. (Tr. 734). Dr. Goff conducted several tests, including the Weschsler Adult Intelligence Scale and the Weschler Memory Scale.

(Tr. 734). Administration of the Weschsler Adult Intelligence Scale revealed scores that fell within the range of intellectual disability. (Tr. 734). Dr. Goff stated that Plaintiff "is not intellectually disabled" but that "this is a dementia secondary to multiple brain infarcts." (Tr. 734). Using the Test of Premorbid Functioning, Dr. Goff estimated a 22-point disparity in Plaintiff's IQ from his expected IQ, among other discrepancies, suggesting "a substantial right cerebral hemisphere problem most likely associated with the massive stroke that is described in the records." (Tr. 735). Administration of the Weschsler Memory Scale obtained "very low" scores, indicating deficits in verbal and visual memory that Dr. Goff considered "quite substantial." (Tr. 736).

Dr. Goff reported that Plaintiff is able to carry out simple verbal instructions but stated that his "memory is severely impaired." (Tr. 736). Dr. Goff consequently assessed Plaintiff as experiencing a "[m]oderate" limitation in understanding simple instructions; a "[m]arked" limitation in understanding detailed or complex instructions, carrying out simple instructions, maintaining activities of daily living, personal habits, and interests; and an "[e]xtreme" limitation in carrying out detailed or complex instructions, remembering simple, detailed, or complex instructions, responding to customary work pressures, dealing with changes in a routine work setting, and maintaining attention, concentration, or pace for periods of at least two hours. (Tr. 738-39).

On November 27, 2019, following his visit to Dr. Goff, Plaintiff again visited Whatley Health Services (Tr. 741), which reported an "impression" of "gait instability, memory problems, vision issues, and inability to live alone." (Tr. 744).

One change in Plaintiff's medical records relates to his mental health. From January 2016 to May 2018, Plaintiff reported no signs, symptoms, or history of mental illness—specifically,

anxiety and depression.  (Tr. 430, 460, 472, 620, 630, 648).  In January 2018, however, Plaintiff reported to Whatley Health Services that he was "[f]eeling down, depressed[,] or hopeless" and that he had "little interest or pleasure in doing things." (Tr. 659). Plaintiff's complaints continued without a specific diagnosis of a mental health issue until July 2018.  (Tr. 663-64, 667-68, 685-86).  In September 2019, Plaintiff's psychiatric finding was normal, and his mood and affect were "appropriate."  (Tr. 748-49). Plaintiff's review of systems was negative for depression and anxiety (*id.*), even though Plaintiff had reported anxiety and depression just a month prior in August 2019. (Tr. 753-54). In November 2019, Plaintiff's review of systems listed positive for depression but negative for anxiety, although Plaintiff's physical examination stated psychiatric was normal and his mood and affect was "appropriate."  (Tr. 742-43).

## II.    ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20

C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020.  (Tr. 13).  Moreover, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 12, 2016—the alleged onset date of his disability. (*Id.*). The ALJ also found that Plaintiff had the following severe impairments: osteoarthritis of the left knee, obesity, diabetes mellitus with neuropathy, and a history of cerebrovascular accidents. (*Id.*).

The ALJ classified several of Plaintiff's impairments as non-severe, including Plaintiff's history of pulmonary embolism, hypertension, and hyperlipidemia; alleged vision loss; and "medically determinable mental impairments of anxiety and depression." (Tr. 14). The ALJ determined the latter mental impairments as non-severe using the "paragraph B" requirements set out in the regulations "for evaluating mental disorders and in the Listing of Impairments." (Tr. 15). The ALJ relied in part on finding three opinions in the record unpersuasive: the State agency physician's determination that Plaintiff's hypertension and diabetes were non-severe; the State agency psychiatrist's determination that Plaintiff did not have medically determinable mental impairments; and the results of Dr. Goff's assessment, for which "[t]here [was] no real medical support . . . other than the subjective complaints of [Plaintiff]." (Tr. 18-19).

Despite finding a mixture of severe and non-severe impairments, the ALJ determined that Plaintiff has neither an impairment nor combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 15). In reaching this determination, the ALJ explicitly ruled out the application of Listings 1.02, 11.04, and 11.14. (*Id.*). The ALJ relied in part on the lack of a conclusion by any "acceptable medical source designated to make equivalency findings" that "[Plaintiff]'s impairments medically equal a listed impairment." (*Id.*). Additionally, the ALJ noted that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his medical conditions are not entirely consistent with the medical evidence and other evidence on record. (Tr. 17).

In conclusion, the ALJ determined that Plaintiff has the RFC to perform light work with the following limitations:

> The [plaintiff] can never climb ladders, ropes[,] or scaffolds. He can frequently handle, finger[,] and feel with his left upper

> extremity, and he should not operate foot controls with the bilateral lower extremities. The [plaintiff] can have only occasional exposure to extremes of heat and only occasional exposure to extremes of cold, as well as full-body vibration. He should have no exposure to hazards, such as unprotected heights and dangerous machinery.

(Tr. 16).

Thus, because of Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, and therefore, has not been under a disability as defined in the Act since May 12, 2016. (Tr. 19-20).

## III.    Plaintiff's Argument for Remand or Reversal

Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Goff because his conclusions were based on direct observation and objective testing and were consistent with other evidence in the record. (Doc. # 11 at 2). Plaintiff also contends that the ALJ erred in failing to properly consider Listing 12.02. (*Id.*). Plaintiff further contends that the ALJ misrepresented the evidence and diminished the mental effects of Plaintiff's strokes, and if the ALJ had properly considered the evidence, Plaintiff would have been found to satisfy Listing 12.02. (*Id.*). Finally, Plaintiff argues that the ALJ erred in failing to address and explain her implicit denial of Plaintiff's request to reopen prior applications. (*Id.*).

## IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by

"substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

The threshold for what constitutes substantial evidence "is not high." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019).  Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.    Discussion

After careful review, the court concludes that the ALJ correctly applied the law and that her decision is supported by substantial evidence.

### A.    The ALJ's Rejection of Dr. Goff's Testimony is Not Reversible Error.

Plaintiff argues that the ALJ erred in rejecting Dr. Goff's testimony because "(t)he ALJ may not arbitrarily reject uncontroverted medical testimony." (Doc. # 11 at 8).  In support of his argument, Plaintiff cites several cases that rely on the special weight courts have given to the opinion of "treating physicians" under the previous Social Security regulations. (Doc. # 11 at 8-10) (citing *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982); *King v. Barnhart*, 320 F.

Supp. 2d 1227 (N.D. Ala. 2004); *Jiles v. Barnhart*, No. 05-G-086-S, 2006 WL 4402937 (N.D. Ala. Sept. 11, 2006)); *see generally Yanes v. Comm'r, So. Sec. Admin.*, No. 20-14233, 2021 WL 2982084, at *5, *8 n.9 (11th Cir. July 15, 2021) (explaining the treating source rule).

For claims filed on or after March 27, 2017, as is the case here, the Social Security Administration removed from its regulations the treating source rule, under which "a treating physician's opinion was entitled to substantial weight unless good cause is shown to the contrary." *See e.g.*, *Pruitt v. Kijakazi*, No. 4:20-CV-00436-AKK, 2021 WL 3861103, at *3 (N.D. Ala. Aug. 30, 2021) (citing 82 Fed. Reg. 5844-01 at 5853). Instead, the new regulations preclude giving "deference" or "any specific evidentiary weight, including controlling weight" to medical opinions, including "those of a claimant's medical sources." *Id.*; *see* 20 C.F.R. § 404.1520c(a).

An ALJ must articulate "how persuasive she finds all of the medical opinions" in the claimant's case record after examining five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, "such as the medical source's familiarity with the agency's policies and the evidence in the claim." *Pruitt*, 2021 WL 3861103, at *3 (citing 28 C.F.R. § 404.1520(c)). Supportability and consistency are the most important factors, and the ALJ's opinion must "explain how she considered the supportability and consistency factors for a medical source's medical opinions." *Id.* (citing 28 C.F.R. § 404.1520c(b)(2)). While the ALJ may explain how she considered the other factors, it is not required. *Id.* (citing 28 C.F.R. § 404.1520c(b)(3)).

With these principles in mind, the court turns to whether the ALJ correctly applied the relevant regulations in considering Dr. Goff's testimony. The ALJ specifically referenced Dr. Goff's opinion on numerous occasions throughout her decision. (Tr. 17 - 19). In fact, contrary to Plaintiff's claim that the ALJ failed to evaluate all but one of the tests performed by Dr. Goff,

the ALJ noted that Plaintiff's "performance on *numerous* tests, *including* a Wexler Adult Intelligence Scale (WAIS-IV), was poor." (Tr. 18) (emphasis added). Merely because the ALJ only specifically listed one test does not mean that she failed to consider all other tests administered by Dr. Goff.

Additionally, the ALJ found that Plaintiff's mental difficulties fluctuated throughout his medical history, and the mental limitations he reported to Dr. Goff are inconsistent with the rest of his medical history. For example, the ALJ noted that Plaintiff reported symptoms of anxiety and depression in August 2019 but failed to do so the next month. (Tr. 18, 753-54, 748-49). The ALJ also noted that during Plaintiff's hearing, his speech issues fluctuated notably depending on whom he was speaking to (*e.g.*, Plaintiff stuttered less when talking to his attorney). (Tr. 18). While Plaintiff avers that his stuttering fluctuated due to anxiety, the ALJ found nothing in the record to support that assertion. (Doc. # 11 at 7-8).

Furthermore, as the ALJ correctly explained, the lack of support and the inconsistencies in Dr. Goff's findings go far beyond his assessment of Plaintiff's mental difficulties. As the ALJ pointed out, Plaintiff's use of a cane at the hearing and Dr. Goff's evaluation as to Plaintiff's cane use is not supported by any evidence in the record. (Tr. 18). Also, as the ALJ found, Plaintiff's reports of blurred vision to Dr. Goff are inconsistent with and unsupported by the record. (*Id.*). The ALJ noted that in previous records Plaintiff complained of blurred vision, but was noted as negative in May and August of 2019. (Tr. Tr. 753-54, 757-58). The ALJ also noted that Plaintiff's daily activity of watching TV is inconsistent with a finding of blurred vision. (Tr. 18).

Thus, the court concludes that, in reviewing Dr. Goff's opinions and findings and explaining the inconsistencies and insupportably of such, the ALJ properly evaluated the medical

evidence under the new regulations; therefore, her decision to reject Dr. Goff's opinion is supported by substantial evidence.  *See Martin*, 894 F.2d at 1529.

**B.**     **The ALJ Applied the Proper Standard Under Listing 12.02 and Substantial Evidence Supports the ALJ's Finding.**

Plaintiff next argues that the ALJ erred in step three of her evaluation by failing to expressly consider Listing 12.02, which applies to neurocognitive disorder.  (Doc. # 11 at 10). The court disagrees.

In the Eleventh Circuit, an ALJ need not "mechanically recite the evidence leading to her determination" because "an implied finding that a claimant does not meet a listing" from the record is permitted.  *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).  *See, e.g.*, *Bailey v. Comm'r of the Soc. Sec. Admin.*, 782 F. App'x 838, 841 (11th Cir. 2019) (finding, in its application of *Hutchison*, that the ALJ, despite not mak[ing] specific findings as to any impairments in the Listings[,]" implicitly indicated all relevant listings were considered by "explicitly f[inding] that [the claimant]'s impairments, individually and in combination, did not meet any listed impairment").  Moreover, when certain listings (are specifically discussed) and given "particular attention," that does not indicate that an ALJ failed to consider all relevant listings at step three.  *Bailey*, 782 F. App'x at 842 n.5.[5]

While the ALJ did not specifically consider Listing 12.02, she did state that "[t]he record does not establish the medical signs, symptoms, laboratory findings, or degree of functional limitations to meet or equal the criteria of *any* listed impairment." (Tr. 15) (emphasis added).

---

[5] *See also Hill v. Saul*, No. CV 1:18-00326-N, 2019 WL 4308766, at *8 (S.D. Ala. Sept. 11, 2019) ("Given the Eleventh Circuit has indicated that, though not required, it would be 'helpful' for ALJs to specifically discuss Listings that were given special consideration at Step Three, the undersigned will not penalize the ALJ for pointing out that she had given special consideration to Listing 11.04, and will accept her Step Three statement that Hill's impairments 'do not meet or equal any requirements of any section' of the Appendix 1 Listings as implicitly indicating she considered all of those Listings, including Listings 2.03B and 2.04B." (relying on *Bailey*, 782 F. App'x at 842 n.5)).

Because the Eleventh Circuit does not require the ALJ to specifically discuss all listings that were given consideration, and because there is nothing in the record inconsistent with it, the court accepts the ALJ's statement that nothing in Plaintiff's records indicate that he "meet[s] or equal[s] the criteria of any listed impairment" in the listings as an implicit indication that she considered all listings, including Listing 12.02. (*Id.*).

Moreover, the ALJ's implicit decision that Plaintiff did not satisfy Listing 12.02 is supported by substantial evidence. Listing 12.02 sets forth requirements for finding disability due to neurocognitive disorders. 20 C.F.R. § 404, Subpt. P, App. 1, § 12.02. An ALJ evaluates a claimant's mental impairments using a process known as "the technique" or "special technique." *See* 20 C.F.R. § 404.1520a(a). In applying the technique, the ALJ "must . . . evaluate the degree of functional loss resulting from the impairment in four separate areas deemed essential for work." *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001) (citing 20 C.F.R. § 404.1520a(b)(3)).[6] These four areas are codified in paragraph B of listing 12.02:

> 1. Understand, remember, or apply information[7]
> 2. Interact with others[8]
> 3. Concentrate, persist, or maintain pace[9]
> 4. Adapt and manage oneself[10]

---

[6] A claimant can meet the requirements of Listing 12.02 by satisfying either 12.02(B) or 12.02(C). *See* 20 C.F.R. § 404, Subpt. P, App. 1, § 12.02. However, because Plaintiff does not argue that he meets the requirements of Listing 12.02(C) in his brief, (Doc. # 11 at 10-12), Plaintiff waives that argument.

[7] 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(E)(1) (explaining the ability to understand, remember, or apply, information "refers to the abilities to learn, recall, and use information to perform work activities.").

[8] 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(E)(2) (explaining the ability to interact with others "refers to the abilities to relate to and work with supervisors, co-workers, and the public.").

[9] 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(E)(3) (explaining the ability to concentrate, persist, or maintain pace "refers to the abilities to focus attention on work activities and stay on task at a sustained rate.").

[10] 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(E)(4) (explaining the ability to adapt or manage oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting.").

20 C.F.R. § 404, Subpt. P, App. 1, § 12.02(B).  To satisfy Listing 12.02(B), a claimant must show an "[e]xtreme limitation of one, or marked limitation of two, of the . . . areas of mental functioning" listed.  *Id.*

Here, the ALJ properly considered the paragraph B criteria and described how she approached the evaluation of the four functional areas.  (Tr. 14 - 15).  The ALJ found that Plaintiff had a "mild limitation"[11] in his ability to: (1) understand, remember, or apply information, (2) interact with others, (3) concentrate, persist, or maintain peace, and (4) adapt or manage oneself.  (*Id.*).  Accordingly, the ALJ concluded that "[b]ecause [Plaintiff]'s medically determinable mental impairments cause no more that 'mild' limitations in any of the functional areas . . . [Plaintiff's limitations] are nonsevere," and therefore, do not satisfy the paragraph B criteria.  (Tr. 15).

Nonetheless, Plaintiff avers that the ALJ's findings that he has mild limitations in his ability to understand, remember, or apply information; interact with others; and adapt or manage oneself is not supported by the evidence.  (Doc. # 11 at 10).  The court disagrees.

First, the ALJ properly explained that the record evidence shows that Plaintiff has a mild limitation in his ability to understand, remember, or apply information.  As the ALJ explained, the record exhibited that Plaintiff has a "normal memory and other mental functions."  (Tr. 14).  The ALJ also noted that Plaintiff sometimes needs help remembering to take his medication and to attend to personal care, as well as reminders about appointments.  (*Id.*).  Additionally, the ALJ found Plaintiff needed assistance in completing his function report and noted that Plaintiff reported he could not follow written instructions and it took him a few minutes to follow spoken instructions.  (*Id.*).  And, although treatment records note that Plaintiff is sometimes a poor

---

[11] *See* 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(F)(2)(b) (defining a "mild limitation" as "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.").

historian, the ALJ found he is generally able to provide information about his personal history and health to medical providers and Social Security.  (Tr. 14-15).

Next, the ALJ properly explained that the evidence shows that Plaintiff has a mild limitation in his ability to concentrate, persist, and maintain peace and to adapt and manage himself.  The ALJ explained that although Plaintiff reported he has difficulties concentrating and completing tasks, he also reported activities that indicate "sustained attention" such as sweeping, making a sandwich, and attending church.  (Tr. 15).  Additionally, the ALJ found that there was no evidence of anger episodes or altercations, and that Plaintiff can interact with a variety of medical providers, despite Plaintiff's reports that he has difficulties handling stress and changes. (*Id.*).

Finally, notwithstanding Plaintiff's arguments to the contrary, as discussed above, the ALJ properly assessed Plaintiff's medical records at step four of her analysis.   (Tr. 16-19). Accordingly, the evidence discussed in the ALJ's paragraph B criteria, along with the evidence discussed while assessing Plaintiff's medical records, constitute substantial evidence that supports the ALJ's implicit finding that Plaintiff did not qualify under Listing 12.02.

### C.    The Court Does Not Have Jurisdiction to Consider Reopening Plaintiff's Prior Applications.

Plaintiff argues that the ALJ erred in denying his request to reopen his prior applications because Dr. Goff's opinion represented "new and material evidence" constituting "good cause" to reopen his case. Plaintiff contends that the ALJ's statement that "the claimant has not shown good cause for reopening" provides "insufficient rationale" for the denial. (Tr. 11, Doc. # 11 at 12).

The Social Security Act limits a district court's judicial review to the "final decision of the Commissioner of Social Security." 42 U.S.C. § 405(g) (2002). Accordingly, district courts

generally do not have jurisdiction over an ALJ's refusal to reopen a claim because such refusal is not a "final decision" within the meaning of Section 405(g). *Califano v. Sanders*, 430 U.S. 99, 107-09 (1977); *see also Cash v. Barnhart*, 327 F.3d 1252, 1256 (11th Cir. 2003). Rather, it is ordinarily an "interim decision not reviewable under § 405(g)." *Cash*, 327 F.3d at 1256. But, courts have recognized two exceptions to this rule: (1) a final decision on a prior social security claim that is "in fact reopened and reconsidered on the merits to any extent on the administrative level" and (2) a colorable constitutional challenge. *Id.* at 1256, 1258 n.8.

Here, there is little to suggest that the ALJ reopened Plaintiff's case to reconsider the merits of the prior decision. (R. 11). The ALJ stated that "[Plaintiff] has not shown good cause for reopening." (*Id.*). Plaintiff's argument, unsupported by any cited authority, that the ALJ's denial was based on "insufficient rationale" is hardly sufficient to support either exception to the Act's limitations on this court's jurisdiction.

Nor has Plaintiff argued, explicitly or implicitly, that the ALJ's failure to reopen the case was a denial of any of his constitutional rights. (Doc. # 11 at 12). "To preserve an issue for appeal, the party must raise the 'specific issue to the district court' so that the district court has 'an opportunity to consider the issue and rule on it.'" *Morrison*, 660 Fed. Appx. at 832 (quoting *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). "Generally, this means that the issue must be plainly and prominently raised, with supporting arguments and citations to the evidence and to relevant authority." *Id.* (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014)). By failing to raise the jurisdictional issue, Plaintiff has thus waived the issue.

This court does not have jurisdiction to review the ALJ's denial of Plaintiff's request to reopen his prior applications.

## VI.    Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.  The Commissioner's final decision is, therefore, due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this December 14, 2021.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE